**State v. Bogan**
*[Cite as 4 AOA 68]*

Case No. 11920
Montgomery County (2nd)
Decided June 14, 1990

*Lee C. Falke, Montgomery County Prosecutor, by Lorine M. Reid, Assistant Prosecuting Attorney, Appellant Division, 41 North Perry Street, Suite 315, Dayton, Ohio 45402, for PlaintiffAppellee.*

*Victor A. Hodge, 367 West Second Street, Suite 110, Dayton, Ohio 45402, for Defendant-Appellant.*

GRADY, J.

Appellant William Bogan, Jr., seeks review of the trial court's judgment finding him guilty of one count of child endangering by abusing a child, a violation of R.C. 2919.22(B)(1). The trial court found that Bogan's action of striking his twenty-three month old son on the side of the head was unreasonable considering the child's age, his size, and the force with which the alleged corporal punishment was issued.

Bogan challenges the trial court's judgment arguing that his conviction is contrary to law and against the manifest weight of the evidence. Essentially, Bogan argues that (1) R.C. 2919.22 does not prohibit a parent from administering reasonable corporal punishment, and (2) the evidence presented at trial did not establish that his action was unreasonable as creating a substantial risk of harm to the child.

For the reasons explained below, we overrule Bogan's alleged error. The decision of the trial court will be affirmed.

I
*Factual Posture*

Early on the morning of May 8, 1989, Tracy Harris, the mother of twenty-three month old William Harris, left for school, placing the child in the care of his natural father, Appellant William Bogan. Bogan and Harris had resided together since December 1987. As was the custom, Bogan was to take the child to his maternal grandmother when he left for work later that day.

After school, Harris went to the grandmother's house to get William. There, the grandmother called Harris' attention to a large bruise on the left side of William's head. The bruise extended from the base of the ear down across the jaw bone. Harris testified that the bruise was not present when she left for school that morning (Tr. 8). Harris took William home and immediately called Bogan at work and inquired into the cause of the bruise (Tr. 9). Bogan stated that he struck William after the child defecated on the floor (Tr. 9).

The next day, at the urging of the grandmother, Harris took William to the emergency room at Children's Hospital. There Dr. Russell Hackett examined William and found a "red-purple ecchymosis or bruising in front of his left ear and across the left mandible, which is the jaw bone." (Tr. 24). Hackett testified that the bruise was unique in that it was "in the shape of fingers." (Tr. 24). Hackett also observed a slight swelling in the area of the bruise, however, no treatment was ordered and William was released the same day.

Before William was released, Robin Hacht, Director of the Child Abuse Team at Children's Hospital, ordered photographs of the injury and contacted the Dayton police and Children's Services concerning William's condition. The police arrived and initiated an investigation.

On June 13, 1989, the Montgomery County Grand Jury indicted Bogan on one count of child endangering in violation of R.C. 2919.22(B)(1). The indictment contained a specification alleging that Bogan had previously been convicted of child endangering. Pursuant to R.C. 2919.22(D), the specification raised the gravity of the alleged offense from a first degree misdemeanor to a fourth degree felony.

On October 5, 1989, after a bench trial, the court found Bogan guilty of misdemeanor child endangering and sentenced him to six months incarceration. The court concluded that Bogan "inflicted physical injury not contemplated as reasonable parental disciplinary action." The court refused to enhance Bogan's offense because the record in the prior child endangering proceeding was devoid of any finding of guilt.

Bogan filed a timely notice of appeal raising one assignment of error.

II.

Bogan's sole assignment of error states:
"APPELLANT'S CONVICTION IS CONTRARY TO THE LAW AND TO THE EVIDENCE."

In reviewing an assignment of error alleging that a criminal conviction is against the manifest weight of the evidence, a reviewing court must limit its inquiry to determining whether there "was sufficient evidence to sustain the decision of the trier of fact." *In Re Watson* (1989), 47 Ohio St.3d 86, 91-92. We may not disturb a trial court's judgment where competent, credible evidence is presented which is sufficient to convince the average person of the defendant's guilt beyond a reasonable doubt. *State* v. *Eley* (1978) Ohio St.2d 169. See, also, *State* v. *Chambers* (Sept. 28, 1982), Montgomery App. No. CA 7360, unreported; *State* v. *Sweet* (October 13, 1989), Montgomery App. No. 10876, unreported. As we recently stated in *State* v. *Kitt* (December 27, 1989), Montgomery App. No. 11621, unreported:

"It is well settled in Ohio that *reversal cannot be had on the ground that a judgment is against the weight of the evidence except as a matter of law.* An appellant court cannot reverse on that ground because the evidence sustaining conviction is open to suspicion or does not impress the reviewing court. *The appellate court may not reverse because it believes another trier of fact might have arrived at a different conclusion or that a contrary verdict might have been rendered.*

"* * *

"*A judgment in a criminal case should not be reversed as being against the manifest weight of evidence where there is substantial evidence on which the trier of fact could reasonably find that all the elements of the charged offense have been proven beyond a reasonable doubt.*" (Emphasis supplied) See also, *Season Coal Co.* v. *Cleveland* (1984), 10 Ohio St.3d 77; *Columbus* v. *Lenear* (1984), 16 Ohio App. 3d 466.

Appellant was convicted of violating R.C. 2919.22(B)(1). R.C. 2919.22 provides, in pertinent part, that:

"(A) No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk[1] to the health or safety of the child, by violating a duty of care, protection, or support. * * *

"(B) *No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:*

"(1) *Abuse the child;*

"(2) Torture or cruelly abuse the child;

"(3) Administer corporal punishment or other physical disciplinary measure * * * which punishment, discipline * * * *is excessive under* *the circumstances and creates a substantial risk of serious physical harm to the child*[.]'" (Emphasis supplied).

The requisite culpable mental state for the crime of child endangering is recklessness See, *State* v. *Adams* (1980), 62 Ohio St.2d 151; *State* v. *O'Brien* (1987), 30 Ohio St.3d 122.

To establish a violation of R.C. 2919.22(B)(1), the state must prove, beyond a reasonable doubt: (1) that the child is under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, (2) an affirmative act of abuse (*State* v. *Kamel* (1984), 12 Ohio St.3d 307), and (3) which act was reckless, that is, perpetrated with heedless indifference to the consequences of the action (R.C. 2901.01 (H)).

Though "child abuse" is not specifically defined in R.C. 2919.22, common sense and the general language of the provision and its accompanying Legislative Service Commission comments indicate that an act which inflicts serious physical harm or creates a substantial *risk* of serious harm to the physical health or safety of the child is child abuse. Cf. Committee Comments to R.C. 2919.22; R.C. 2151.031; *State* v. *Artis* (1989), 46 Ohio App.3d 25.

Whether the state has met its burden of proving the elements of R.C. 2919.22(B)(1), is an issue for the trier of fact. However, the proof for each element must be analyzed in light of the nature of the physical act relative to the substantial risk of harm, whether the act was justified by the underlying circumstances, and whether the act was recklessly perpetrated. Cf., *In the Matter of: Kimberly Noftz, Alleged Abused Child* (August 22, 1986), Huron App. Nos. H-85-26, H-86-11, unreported.

In this instance, we find that the trial court had sufficient evidence before it to conclude that Bogan's conduct was excessive, reckless, and not justified by the underlying circumstances. The record reveals that Bogan struck William because the child, who was only twenty-three months old at the time, defecated on the floor. Bogan readily admitted this fact. The record further establishes that Bogan struck William on the head with such force as to create not only a welt but actually to rupture underlying blood vessels creating a substantial bruise and slight swelling. Dr. Hackett testified that the bruise took the shape of a human hand.

The state was not required to prove an injury, only that Bogan's conduct *created a substantial risk of serious harm.* Such risk could readily be inferred from the evidence presented

by the state. Bogan's "slap" was not to an innocuous part of William's body. Rather, the "slap" was actually a blow to the child's head which, given its force and location, readily posed a substantial risk of harm to his physical health and development. Based on the record, the trier of fact could also have found that Bogan perpetrated this act without heed to the potentially grave consequences of striking a young child on the head with such force.

We find that the trial court had before it substantial evidence on which it could reasonably find that the requisite elements of child abuse were proved beyond a reasonable doubt. Bogan's sole assignment of error is overruled.

III.

For the reasons explained above, we overrule Bogan's assignment of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN, J., and FAIN, J., concur.

---

[1] The term "substantial risk" is defined in R.C. 2901.01(H) as "* * * a strong possibility, as contrasted with a remote or significant possibility, that a certain result *may occur* or that certain circumstances may exist." (Emphasis supplied.)